## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JOHN D.[1],
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 2:23-cv-3613
Watson, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff John D. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's statement of errors (Doc. 8), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum (Doc. 10).

## I. Procedural Background

Plaintiff protectively filed an application for DIB on December 29, 2021, alleging a disability onset date beginning January 1, 2020, due to COPD, emphysema, restless leg syndrome, sleep apnea, and bilateral hip replacement. (Tr. 189-92; 221). Plaintiff's insured status expired on December 31, 2020. His application was denied initially and upon reconsideration. (Tr. 18). Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Jason P. Tepley. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on May 26, 2023. (Tr. 45–78). On

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

June 13, 2023, the ALJ issued a decision denying plaintiff's DIB application.  (Tr. 15-44).  This decision became the final decision of the Commissioner when the Appeals Council denied review on September 6, 2023.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact

and conclusions of law:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2020.  (footnote omitted).

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2020 through his date last insured of December 31, 2020 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, [plaintiff] had the following severe impairments: degenerative joint disease of the hips with trochanteric bursitis; degenerative joint disease of the knees; chronic obstructive pulmonary disease (COPD); peripheral artery/vascular disease with Leriche syndrome and remote stenting; coronary artery disease; degenerative disc and joint disease of the thoracic and lumbar spines; obstructive sleep apnea (OSA); restless leg syndrome (RLS); obesity; and right shoulder arthritis with remote rotator cuff tear and repair (20 CFR 404.1520(c)).

4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [plaintiff] could occasionally push/pull with the left lower extremity. He could frequently stoop and crouch. [Plaintiff] could occasionally climb ramps and stairs. He could occasionally balance, as defined in the SCO, to mean, maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic

feats. [Plaintiff] could occasionally kneel. He should avoid crawling or climbing ladders, ropes, and scaffolds. [Plaintiff] could have occasional exposure to vibration. He should avoid exposure to dusts, odors, fumes, and pulmonary irritants. He should avoid all exposure to moving mechanical parts, unprotected heights, and commercial driving. [Plaintiff] could understand, remember, and carry out simple tasks. (footnote omitted).

6. Through the date last insured, [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [in]… 1967 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. [Plaintiff] has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from January 1, 2020, the alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(g)).

(Tr. 20-38).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[2] Plaintiff's past relevant work was as a handyman, a medium, very heavy as performed, skilled position.  (Tr. 36, 73).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as mail clerk (11,000 jobs), routing clerk (118,000 jobs), and storage rental clerk (69,000 jobs).  (Tr. 37, 75).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec., 478 F.3d 742*, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff raises a single assignment of error, arguing that the ALJ erred by selectively focusing on evidence that supported his conclusion and failing to consider the relevant medical evidence prior to the date last insured when evaluating (1) the severity of plaintiff's symptoms and (2) the opinion of plaintiff's treating source, Dr. Rashi Anne Fischer. (Doc. 8 at PAGEID

2783-2786).  Plaintiff argues that the ALJ "failed to discuss" the following evidence "in the context of his [own] symptom severity analysis or in his evaluation of Dr. Fischer's opinion": the x-ray dated May 22, 2020; plaintiff's risk for falls; the MRI of plaintiff's lumbar spine dated August 26, 2020; and the emergency room visits on August 22, 2020, and August 25-27, 2020 for "chronic left sciatica with urinary incontinence" during which plaintiff was "unable to ambulate." (Doc. 8 at PAGEID 2783-84).

The Commissioner counters that the ALJ's findings are supported by substantial evidence, and instead of relying solely on plaintiff's subjective description of his symptoms, the ALJ properly considered the record as a whole, including the objective medical evidence such as clinical exam findings, the effectiveness of treatment, the limited and conservative nature of treatment, the side effects of his medications, his reported daily living activities, and the prior administrative findings of the state agency medical consultants.  (Doc. 9 at PAGEID 2793-2805). The Commissioner further argues that plaintiff seeks for this Court to "reweigh the evidence and come to a different conclusion which is not the Court's job on substantial evidence review." (Doc. 9 at PAGEID 2805).

### 1. Symptom Severity

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  Social Security Ruling (SSR)[4] 16-3p, 2016 WL

---

[4] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a

plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March

2016, the agency eliminated its use of the term "credibility" and clarified "that subjective

symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016

WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p). To avoid such

mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's

subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F.

App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119

n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record

contains objective medical evidence of an underlying medically determinable impairment that

could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL

1119029, at *3. *See also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's

symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine

the extent to which the symptoms limit an individual's ability to perform work-related activities.

*See* 20 C.F.R. §§ 404.1529(a) and (c); SSR 16-3p, 2016 WL 1119029, at *4. In making this

determination, the ALJ will consider the following:

> (i)      Your daily activities;
>
> (ii)     The location, duration, frequency, and intensity of your pain or other
>          symptoms;
>
> (iii)    Precipitating and aggravating factors;
>
> (iv)     The type, dosage, effectiveness, and side effects of any medication you

take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he

8

ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[5]

Plaintiff argues "the ALJ selectively focused mostly on only evidence that purportedly supports his conclusion, to the exclusion of the record evidence as a whole." (Doc. 8 at PAGEID 2783). In this regard, plaintiff contends the ALJ "failed to discuss" the following evidence "in the context of his symptom severity analysis": the x-ray dated May 22, 2020; plaintiff's risk for falls; the MRI of plaintiff's lumbar spine dated August 26, 2020; and emergency room visits (August 22, 2020, and August 25-27, 2020) including an incident of "urinary incontinence" and plaintiff's inability to ambulate. (Doc. 8 at PAGEID 2783-84).

As an initial matter, to the extent plaintiff suggests the ALJ erred by not including his evaluation of the evidence cited above in the section or paragraphs of his decision discussing plaintiff's symptom severity (Tr. 30-32), plaintiff's argument is not well-taken. The Court reviews the ALJ's decision as a whole in evaluating his findings for substantial evidence. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023). The

[5] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference. Sixth Circuit decisions subsequent to SSR 16-3p, however, have retained the notion of deference to the ALJ in the symptom-consistency context, though they have not directly acknowledged the change. *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements."); *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 340 (6th Cir. 2018) ("[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.") (quoting *Jones*, 336 F.3d at 475); *Mason v. Comm'r of Soc. Sec.*, No. 17-2407, 2018 WL 6133750, at *2 (6th Cir. Apr. 30, 2018) (same).

Court may uphold the ALJ's symptom severity analysis where the ALJ provides a "thorough explanation elsewhere of his reasons for doubting [plaintiff's] account" of his symptoms.  *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Contrary to plaintiff's contention, the ALJ did not fail to evaluate the May 22, 2020 x-ray of plaintiff's left hip in evaluating plaintiff's complaints of hip pain.  (Tr. 28).  The ALJ observed that plaintiff was seen in the emergency department for complaints of left hip pain on May 22, 2020, where plaintiff reported he was "laying carpet[] and started having increased pain in his left hip."  (Tr. 335).  An x-ray of plaintiff's left hip was taken, and the emergency department physician noted "significant degeneration to the left hip."  (*See* Tr. 338).  As the ALJ reasonably noted, however, the "actual radiologist noted that [the degeneration] was mild."  (Tr. 28 at n.3, citing Tr. 339).  The diagnostic radiology report cited by the ALJ reflects, "Mild left hip joint degenerative changes.  No fracture or dislocation."  (Tr. 339).  The ALJ did not err by relying on the radiologist's interpretation of the x-ray in resolving this apparent conflict.  *See Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) ("It is the ALJ's place . . . to 'resolve conflicts in evidence.'") (citation omitted); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 546 (6th Cir. 2002).

Plaintiff further contends the ALJ failed to discuss plaintiff's risk of falls in the symptom severity analysis.  (Doc. 8 at PAGEID 2783-84, citing Tr. 336).  Plaintiff is mistaken.  The ALJ thoroughly examined plaintiff's "risk of falls" in his discussion of plaintiff's symptom severity and elsewhere in his decision.  The emergency department record cited by plaintiff includes a list of "Past Medical History Problems" which notes "at risk for falls."  (Tr. 336).  The ALJ noted this medical history but reasonably found that plaintiff "was not routinely treated for falls or fall related injuries."  (Tr. 35; *see* Tr. 336).  Furthermore, when plaintiff related the history of his

present illness to the emergency room physician that date, he "denie[d] any direct injury, traumas, or falls." (Tr. 335). The ALJ also acknowledged plaintiff's testimony that he fell down the stairs a couple of times in 2020. (Tr. 31, 52). Nevertheless, the ALJ reasonably concluded that plaintiff's testimony was inconsistent when compared to the record as a whole, finding:

> The record contains additional documented inconsistencies and inconsistent statements. The claimant reported during the period under consideration he fell down the stairs a couple of times in his apartment. While reporting such falls, the record was devoid of frequent reports of falls made to his medical providers and the claimant did not seek recurrent emergent treatment for falls or fall related injuries during the period under adjudication.

(Tr. 31). Plaintiff does not take issue with the ALJ's conclusions in these regards, and the Court finds no error in the ALJ's evaluation of this evidence.

Plaintiff also contends that ALJ failed to consider the August 26, 2020 MRI of his lumbar spine, which showed multi-level degenerative changes with facet arthropathy, disc bulges, right foraminal narrowing at L4-5, and bilateral foraminal narrowing at L3-4. (Doc. 8 at PAGEID 2784, citing Tr. 392). Contrary to plaintiff's contention, the ALJ specifically evaluated this evidence in his symptom severity section and other portions of his decision, finding the imaging of plaintiff's spine "showed ongoing degenerative changes but demonstrated no cord compression" and "no noted need for any surgical intervention." (Tr. 28, citing Tr. 368, 392; Tr. 32, citing Tr. 392). The ALJ also noted that plaintiff received "no more than some acute medication management at times of exacerbation" and had not received "any routine pain management treatment" for this condition. (Tr. 28). The ALJ did not fail to consider this evidence.

Finally, plaintiff alleges the ALJ failed to consider emergency department records from August 2020 indicating his pain was so severe he was unable to ambulate. (Doc. 8 at PAGEID

2784).  Plaintiff presented to the emergency department on August 22, 2020, with worsening back

pain.  (Tr. 358).  The emergency department physician stated:

> Patient [] complaining of severe low back pain radiating to the left leg not relieved
> by Norco this been prescribed.  He is given Dilaudid IM.  We do a post void residual
> bladder scan, and he has 2 mL's.  I review x-rays dated 8/17/2020 ordered by his
> primary care provider which shows no compression fracture or spondylolisthesis,
> and mild to moderate degenerative changes per radiology.  His pain improved after
> Dilaudid.  I have low suspicion for cord compression syndrome or vascular or
> infectious etiology of his symptoms.  Today he does not have a foot drop.  Patient
> is advised to follow-up with his primary care provider and discuss orthopedic
> referral.

(Tr. 361).  Plaintiff returned to the Emergency Department on August 25, 2020 "with acute

worsening of chronic back and left leg pains."  (Tr. 367).  The attending physician stated:

> He has been seen in my office several times over the past 2 months for back and
> left hip pain.  However, this has become much worse over the past 1 week.  He
> [complains of] pain in back and worse in left lateral hip.  He [complains of] tingling
> down leg as well as some numbness in left groin.  Pain is worse with ambulation
> and tender to palpation.  He was seen in my office 1 week ago where we obtained
> XR and he was prescribed hydrocodone.  This helped some but when he ran out he
> presented to ER.  Yesterday pain became so severe he says he could not ambulate.
> He had one sudden, unexpected urine incontinence episode.  Denies bowel
> incontinence.

(*Id.*).

The ALJ explicitly considered plaintiff's August 2020 emergency room visits for "an

acute exacerbation of chronic left sciatica . . . [and] reports of tingling and numbness into the

groin and pain worse with ambulation" and "one isolated episode of urinary incontinence."  (Tr.

28, citing Tr. 367, 460).  The ALJ observed that while "[plaintiff] reported recurrent urinary

issues . . . during the period under consideration, the record supported an isolated incident of

urinary incontinence related to his back and hip pain."  (Tr. 32; *see also* Tr. 27 (noting that in

"May 2020, the record supported a history of spinal degeneration without reports of bowel or

bladder dysfunction")).  The ALJ further noted that "[plaintiff] reported he saw a urologist at

12

Licking Memorial for urinary issues after the issue of urinary incontinence and reported he was taking Flomax.  However, he reported after his physician retired, he did not continue follow up care other than to take the medication."  (Tr. 25).

The ALJ also thoroughly reviewed the relevant medical evidence as to plaintiff's ability to ambulate and his use of mobility aids and a wheelchair, noting that plaintiff was classified as an "unassisted ambulator" by medical staff during the time under consideration.  (Tr. 28 (citing to Tr. 461, 814)).  The ALJ acknowledged plaintiff's testimony that he owned a "wheelchair, walker, and cane" (Tr. 24) and that he utilized the cane during the "period of adjudication" when plaintiff "felt it was needed."  (Tr. 32).  However, the ALJ noted:

> While he reported using the [cane] as needed, it should be noted he was observed to independently ambulate during the period under consideration by medical providers and was not routinely observed to ambulate with the assistance of devices/aides.  The record supported some slight weakness in the lower extremities as a result of his coexisting conditions, but the claimant did not evidence atrophy or instability and he showed no spinal instability.  The claimant reported significant mobility restrictions during the period under consideration; however, he was not notably observed to be significantly deconditioned with atrophy or significant weakness and continued as noted above to engage in relatively significant physical exertional tasks inconsistent with his self-reported limitations.

(Tr. 32; *see also* Tr. 25, 28 (noting "[plaintiff] was observed to be an unassisted ambulator").

The ALJ further considered the opinion of the consultant examiner, Dr. Parker Guinsler, D.O., as to plaintiff's ability to ambulate and claims of being "wheelchair bound."  (Tr. 33).  The ALJ reasonably determined Dr. Guinsler's opinion to be "irrelevant" given that it was made years after the period of consideration and that there was "nothing in his opinion that denotes [it] relates back to the period under adjudication."  (Tr. 33).  The ALJ observed that Dr. Guinsler's assessment of plaintiff occurred in March 2022 and was "based upon [plaintiff's] recent [hip]

13

surgery and residual chronic debilitation . . . during a post operative period." (Tr. 33). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted). "To be relevant to the disability decision, 'post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.'" *Kingery v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 598, 602 (S.D. Ohio 2015) (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)). The ALJ reasonably determined that Dr. Guinsler's findings did not relate back to the date plaintiff's insured status lapsed and that his opinion was unpersuasive and "not consistent with the evidence from the period at issue." (Tr. 33).

The ALJ did not fail to evaluate or discuss the specific evidence plaintiff cites, and the fact that some of this evidence appears in portions of the ALJ's decision other than the symptom severity analysis (Tr. 30-32) does not inhibit this Court's review. *Forrest*, 591 F. App'x at 366. Plaintiff's statement of error concerning the ALJ's symptoms severity analysis should be overruled.

### 2. Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[6] *Id.* The Commissioner will "not defer or give any specific evidentiary weight,

---

[6] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[7], including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).[8] In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[9] and supporting explanations presented by a medical source are to support his or his medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for

---

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[7] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[8] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n. 1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.1520c, respectively. The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Order.

[9] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

a medical source's medical opinions" in the written decision.  20 C.F.R. § 404.1520c(b)(2).

Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the

relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the

regulation.  *Id.*  However, where two or more medical opinions or prior administrative findings

about the same issue are equally persuasive, the ALJ must articulate how he or she "considered

the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ."  20 C.F.R. §

404.1520c(b)(3).  Finally, the ALJ is not required to articulate how he or she considered evidence

from nonmedical sources.  20 C.F.R. § 404.1520c(d).

Plaintiff alleges the ALJ "failed to evaluate the relevant objective medical evidence prior

to the date last insured when evaluating . . . the opinion of his treating source, Rashi Anne

Fischer, M.D."  (Doc. 8 at PAGEID 2783).  Plaintiff again points to the aforementioned

evidence[10] that, according to plaintiff, the ALJ failed to discuss in the context with his evaluation

of Dr. Fischer's opinion.  (Doc. 8 at PAGEID 2783).  The Commissioner argues that the ALJ

properly considered the opinion of plaintiff's treating source and "considered several factors,

including the factors of supportability and consistency" to find Dr. Fischer's opinion "not

persuasive."  (Doc. 9 at PAGEID 2805 (citing Tr. 33-35)).

Plaintiff's primary care physician, Dr. Fischer, reported that she did not start treating

plaintiff until November 2021 (Tr. 2694), and she prepared a medical assessment of plaintiff's

physical abilities on May 11, 2023.  (Tr. 2694-2701).  She stated that plaintiff's mobility was

significantly decreased due to severe pulmonary artery disease and that he would not be able to

withstand the pressure of meeting normal standards of work productivity and work accuracy

---

[10] The x-ray dated May 22, 2020; plaintiff's risk for falls; the MRI of plaintiff's lumbar spine dated August 26, 2020; and the emergency room visits on August 22, 2020, and August 25-27, 2020 for "chronic left sciatica with urinary incontinence" during which plaintiff was "unable to ambulate."  (Doc. 8 at PageID 2783-84).

without significant risk of physical or psychological decompensation or worsening of his impairments.  (Tr. 2695).  She limited plaintiff to lifting five pounds frequently and 10 pounds occasionally.  He could stand or walk for one-hour per eight-hour workday and sit for four hours.  (Tr. 2696-97).  She found plaintiff lacked stability when standing (Tr. 2697), and he required a cane for ambulation and balance (Tr. 2698).  Dr. Fischer also believed that plaintiff would be absent from work more than three times per month and off-task two-thirds of the time.  (Tr. 2698-99).  Dr. Fischer stated that plaintiff did not have the residual functional capacity to perform light or sedentary exertion work on a sustained basis.  (Tr. 2701).  She concluded that plaintiff's disability did not begin prior to December 31, 2020.  (*Id.*).

In a letter dated May 19, 2023, Dr. Fischer clarified her previous "no" response to the question "is there a reasonable medical basis of believing that [plaintiff]'s disability began prior to December 31, 2020."  (Tr. 2724).  Dr. Fischer stated, "Although this was prior to me caring for [plaintiff], he underwent stenting of his aorta in 2018, which would *suggest* that the peripheral arterial disease causing significant pain and debility started prior to 2018."  (*Id.*) (emphasis added).

As an initial matter, the ALJ appropriately dismissed Dr. Fischer's unsupported assertion that plaintiff "has not been capable of functioning at a level to sustain a job" (Tr. 2694) as being "neither valuable nor persuasive in accordance with 20 CFR 404.1520bc."  (Tr. 34).  The ALJ was not required to accept Dr. Fischer's opinion that plaintiff was essentially not employable.  Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner.  20 C.F.R. § 404.1520b(c)(3)(i) ("[Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work]" suggest a particular disability determination, which is an issue reserved to the Commissioner).  *See also Warner v. Comm'r of*

*Soc., Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.")) (brackets omitted).

The ALJ engaged in a detailed discussion of Dr. Fischer's conclusions in the opinion evaluation section of the RFC analysis and ultimately found it to be less persuasive.  (Tr. 35). The ALJ addressed the two most important factors in evaluating medical opinions, in accordance with 20 C.F.R. § 404.1520c—supportability and consistency—finding that Dr. Fischer's opinion lacked support in the record and was inconsistent with the medical and non-medical sources in the record.  (Tr. 34).  Despite plaintiff's claims to the contrary, the ALJ's determination that Dr. Fischer's opinion was less persuasive is supported by substantial evidence.

The ALJ addressed the supportability factor, determining that Dr. Fischer's opinions lacked support given that she "did not start treating the [plaintiff] as a patient until November 2021, almost a year after the expiration of his date last insured and after the period under consideration."  (Tr. 34).  The ALJ further explained his reasons for minimizing the weight of Dr. Fischer's medical opinion, finding:

> [Dr. Fischer] did not support h[er] suggested opinion with any citation to any
> evidence [s]he had reviewed during the relevant period, rather it was based upon a
> speculation of a diagnosed impairment and the claimant's subjective reports
> (which for reasons noted above, are not entirely consistent with the evidentiary
> record).

(Tr. 34).

The ALJ cited elements of Dr. Fischer's evaluation of plaintiff in May 2023, over two years after the expiration of his date last insured, in which she considered other diagnosed physical conditions that did not relate back to the period under consideration, such as plaintiff's acute stroke (onset August 2022) and torn rotator cuff.  (Tr. 34).  The ALJ acknowledged that

18

while plaintiff had a "remote history of rotator cuff injury and tearing, the significant deterioration

in the shoulder functioning with retearing of the right shoulder observed upon imaging was not

objective documented in the record until April 2023, years after the expiration of the claimant's

date last insured." (Tr. 34). Further, the ALJ observed that Dr. Fischer's evaluation of plaintiff

occurred during plaintiff's "post operative recovery period" for a hip replacement, which would

have significantly impacted the nature of the evaluation. (Tr. 34).

The ALJ next evaluated whether Dr. Fischer's opinion was consistent with the record as a

whole. The ALJ found Dr. Fischer's evaluation of plaintiff's mobility was not consistent with the

record, reasoning:

> The undersigned has not adopted the need for a cane for ambulation or balance
> during the period under consideration because the claimant was not routinely
> observed to utilize the device when he was seen by providers. [Plaintiff] showed
> some reduced range of motion and some slight weakness in the lower extremities,
> but there was no observed spinal instability. [Plaintiff] was not utilizing braces for
> his back, hips, or knees . . . [and] was described as being an independent/unassisted
> ambulator by providers when seeking treatment. . . . [Plaintiff] reported he was not
> routinely taking pain medications, but noted they were only provided sporadically
> during the period. [Plaintiff] did not require any treatment with a noted recovery
> period, and he was not hospitalized for extended duration on multiple occasions.
> While the record does support exertional, postural, and environmental limitations,
> the objective evidence does not support the severity of limitation assessed by the
> provider during the period under adjudication. While [plaintiff] was noted to have
> peripheral vascular disease and reported lower extremity cramping in addition to
> his other coexisting physical severe impairments, the record supports generally
> conservative treatment during the period under consideration.

(Tr. 34-35). The ALJ further noted that "[plaintiff]'s self-reported activities to providers during

various times during 2020 are not consistent with such significant physical restrictions assessed

by Dr. Fischer." (Tr. 35). The ALJ pointed to plaintiff's reports of engaging in physically

exertive tasks during the period under consideration, including "admitt[ing] that during 2020 he

was able to lay carpet, lift a truck bed, and install an air conditioning unit." (Tr. 35, citing Tr.

335, 344, 351).  The ALJ did not "adopt[] any limits for pain/fatigue verbatim" but he "considered their affects when additionally limiting the [plaintiff] to simple tasks."  (Tr. 34).

The ALJ considered the medical records and plaintiff's activities of daily living and reasonably discounted Dr. Fischer's opinions, finding it "collectively less persuasive," where it was inconsistent with the other record evidence.  (Tr. 35).  The ALJ's decision is well-reasoned and supported by substantial evidence.

Plaintiff again argues that the ALJ failed to discuss certain evidence in the context of his evaluation of Dr. Fischer's opinion (Doc. 8 at PAGEID 2783-84, citing to (*See* Tr. 31-32, R 34-35)).  As explained above, the ALJ discussed and evaluated the particular evidence plaintiff cites in his statement of errors.  The ALJ's decision as a whole reflects a thorough examination of the medical evidence and supports his assessment of the persuasiveness of Dr. Fischer's opinion.  *See William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022), *report and recommendation adopted*, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022) (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "the ALJ did not reproduce the list of these treatment records a second time when she explained why [the physician's] opinion was inconsistent with this record.  But it suffices that she listed them elsewhere in her opinion)).  Further, while plaintiff argues the evidence he cites "is not consistent with light exertion work" (Doc. 8 at PAGEID 2783-84), he does not articulate the reasons for this conclusion or direct the Court to any supporting case law.  Nor does plaintiff address how this evidence affects the ALJ's evaluation of Dr. Fischer's opinion.

Lastly, to the extent plaintiff references evidence in the record that may be considered consistent with Dr. Fischer's opinion or could cast doubt on the ALJ's disability finding, it is not the province of the Court to reweigh the evidence. "Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 898 (6th Cir. 2019) (alteration in original) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)). The evidence in the record substantially supports the ALJ's findings. Plaintiff's statement of error concerning the ALJ's evaluation of Dr. Fischer's opinion should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's statement of errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 1/7/2025

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOHN D.,                                    Case No. 2:23-cv-3613
     Plaintiff,                          Watson, J.
                                           Litkovitz, M.J.
vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).